UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
++++++++++++++++++++++++++++++++++++++++++++++++++++++

**Dean Hinderliter and Alice Hinderliter,**

                                     **Plaintiffs,**

                    **-v-**                                  6:10-CV-1314 (NAM/GHL)

**Diverisified Consultants, Inc.,**

                                     **Defendant.**

++++++++++++++++++++++++++++++++++++++++++++++++++++++

APPEARANCES:
Krohn & Moss, Ltd.
Adam T. Hill, Esq., of counsel
10 North Dearborn Street, 3rd Floor
Chicago, Illinois 60602
and
Krohn & Moss, Ltd.
Shireen Hormozdi, Esq., of counsel
10474 Santa Monica Boulevard, Suite 401
Los Angeles, California 90025
Attorneys for Plaintiffs

Peltan Law, PLLC
David G. Peltan, Esq., of counsel
128 Church Street
East Aurora, New York 14052
and
The Dunn Law Firm
Steven R. Dunn, Esq., of counsel
5420 LBJ Freeway, Suite 577
Dallas, Texas 75240
Attorneys for Defendant

**Hon. Norman A. Mordue, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Plaintiffs claim that in the course of attempting to collect a debt owed by plaintiff Dean Hinderliter to Sprint for a personal cellular telephone bill, defendant, a collection agency, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Defendant moves

(Dkt. No. 23) for summary judgment and an award of attorney's fees. The Court grants the motion, except insofar as it seeks attorney's fees, and dismisses the complaint.

## FACTS

In addressing defendant's motion for summary judgment (Dkt. No. 23), the Court relies primarily on the following, all of which were submitted by plaintiffs in opposition to the motion: defendant's account history; the transcript of the November 3, 2011 deposition of Rebecca A. Losco ("Losco"), the collector employed by defendant who handled plaintiffs' account; and the transcript of the August 23, 2010 telephone conversation between Losco and plaintiffs. There is no declaration from Dean Hinderliter or Alice Hinderliter.

Plaintiffs do not challenge the accuracy of the transcript of the August 23, 2010 telephone conversation. Thus, the Court relies on the transcript as conclusive evidence of the content of that conversation, and does not consider plaintiffs' characterizations of the conversation in their complaint, answers to interrogatories, statement of material facts, and memorandum of law.[1] Nor do plaintiffs challenge the accuracy of the account history, and the Court accepts it as undisputed evidence of the events recorded therein.

The Court also relies on the affidavit of Mavis Pye ("Pye"), defendant's Compliance Officer. Pye's affidavit establishes that defendant does not disguise or hide its telephone calls

---

[1] The complaint contains allegations regarding the content of the August 23, 2010 telephone conversation that are inconsistent with the transcript of that conversation. Plaintiffs (who submitted the transcript as part of their response to the motion) do not explain this discrepancy, nor do they submit declarations on this motion. Moreover, plaintiffs do not rely on the allegations in their Statement of Additional Material Facts or other submissions in opposition to the motion. Therefore, to the extent the allegations in the complaint are contradicted by the transcript, the Court does not consider them, despite the fact that the complaint is verified.

through the use of a "private" or "unavailable" call designation.[2]

Based on these submissions, the undisputed facts are as follows. On August 18, 2010 defendant received the account from Sprint, claiming that plaintiff Dean Hinderliter owed it $513.98. On August 19, 2010 defendant sent Dean Hinderliter a collection letter.[3] On August 23, 2010, Losco first telephoned plaintiffs' home, speaking with Dean Hinderliter and then with his wife Alice Hinderliter. Losco did not succeed in obtaining a payment from them during that conversation. Thereafter, she placed five additional calls to plaintiffs' telephone number in August 2010, seventeen calls in September 2010, and fifteen calls between October 1 and 22, 2010. Except for the initial conversation on August 23, 2010, plaintiffs never answered Losco's calls. Defendant does not disguise or hide its telephone calls through the use of a "private" or "unavailable" call designation. It appears that on each unanswered call Losco left a message on plaintiffs' answering machine.

Plaintiffs' complaint claims:

> a. Defendant violated §1692d of the FDCPA by engaging in conduct the natural consequence of which is to harass, oppress or abuse Plaintiffs in connection with the collection of a debt; and

---

[2] Pye's affidavit states: "Defendant does not disguise or hide its telephone calls through the use of a 'private' or 'unavailable' call designation." Pye further states: "Defendant's telephone number is displayed on each call it initiates." In their Statement of Additional Material Facts, plaintiffs state: "Ms. Pye lacks personal knowledge as to how Defendant's telephone calls appear on another's caller ID and purports to have knowledge as to how its calls are displayed on each call it places." Although discovery is complete, plaintiffs submit no evidence that defendant disguises its telephone calls in any manner. While it is true that Pye does not know how defendant's calls appear on plaintiffs' telephone, Pye is competent to state whether defendant purposefully disguises or hides its telephone number on its calls.

Plaintiffs' verified complaint states that defendant placed its collection calls to plaintiffs "from 877-299-1999 and private numbers." In their opposition to this motion, plaintiffs do not rely on this allegation, and they do not set it forth in their Statement of Additional Material Facts. Thus, the Court disregards it.

[3] Plaintiffs do not assert any claim based on the contents of the collection letter, which is not part of the record.

> b. Defendant violated §1692d(5) of the FDCPA when Defendant caused Plaintiffs' telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiffs.

The complaint seeks statutory damages of $1,000 plus attorney's fees and costs.

By order dated January 4, 2012 (Dkt. No. 29), this Court affirmed the text order of United States Magistrate Judge George H. Lowe, dated November 17, 2011, denying plaintiff's request (Dkt. No. 21) for leave to serve and file an amended complaint alleging a violation of section 1692e(10) of the FDCPA (using false, deceptive, or misleading means to collect a debt). As set forth below, the Court grants defendant's motion (Dkt. No. 23) for summary judgment except insofar as defendant requests an award of attorney's fees.

## APPLICABLE LAW

Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). When deciding a summary judgment motion, the Court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

As pertinent here, section 1692d of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d, provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> \*\*\*
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

In evaluating a claim that a defendant "[c]aus[ed] a telephone to ring or engag[ed] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" in violation of 15 U.S.C. § 1692d(5), courts primarily consider the volume and pattern of calls. Case law is not easily summarized, and courts have disagreed as to the volume and pattern of calls sufficient to create an issue of fact on the defendant's intent to annoy, abuse, or harass. *See Chavious v. CBE Group, Inc*., 2012 WL 113509, \*2-\*3 (E.D.N.Y. Jan. 13, 2012) (citing cases); *Carman v. CBE Group, Inc*., 782 F.Supp.2d 1223, 1230-32 (D.Kan. Mar. 23, 2011) (citing cases). A number of courts have awarded summary judgment to the defendant, even in cases of frequent calls, where the evidence demonstrates an intent to contact the plaintiff and does not support a finding of an intent to annoy, abuse, or harass him. *See, e.g., Chavious*, 2012 WL 113509 at \*2; *Carman*, 782 F.Supp.2d at 1232; *Tucker v. CBE Group, Inc*., 710 F.Supp.2d 1301, 1305 (M.D.Fla. 2010); *Saltzman v. I.C. Sys., Inc.*, 2009 WL 3190359, \*6–\*7 (E.D.Mich. Sept. 30, 2009). These courts based their determinations on undisputed evidence of factors such as the following: the plaintiff did not answer most or all of the defendant's telephone calls; the plaintiff did not ask the defendant to stop calling; the defendant did not make numerous calls in a single day; the defendant did not call third parties such as the plaintiff's employer; the defendant did not immediately call back if a plaintiff hung up the telephone; and the defendant did not otherwise engage in egregious conduct.

Section § 1692d is not limited to the conduct proscribed by its subsections.[4] Accordingly, courts have the authority "to proscribe other improper conduct which is not specifically addressed." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985) (quoting S.Rep. No. 95-832, 95th Cong., 1st Sess., reprinted in 1977 U.S.Code Cong. & Ad. News 1695, 1698). Courts typically evaluate claims based on section 1692d's prohibition of "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" by viewing the conduct "from the perspective of a consumer whose circumstances make[] him relatively more susceptible to harassment, oppression, or abuse." *Id.* at 1179. Where the challenged conduct includes a communication regarding the debt, courts in this circuit evaluate the content of the communication from the perspective of the "least sophisticated consumer." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). A section 1692d claim encompasses "the totality of the conduct." *Penny v. Williams & Fudge, Inc.*, 840 F.Supp.2d 1314, 1322 (M.D.Fla. Jan. 5, 2012); *see, e.g., Johnson v. Capital Mgmt. Servs.*, 2011 WL 6012509, *5 (W.D.N.Y. Dec. 1, 2011).

## DISCUSSION

In the case at bar, it is undisputed that the only time Losco actually spoke with plaintiffs was the August 23, 2010 conversation. The transcript of that conversation establishes that the debtor, Dean Hinderliter, acknowledged that he owed part of the $513.98 debt. He stated: "I will pay for the services I received. I will not pay the termination fees. I've told [Sprint] this from

---

[4] In addition to subsection (5)'s proscription of "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass," section 1692d also proscribes other specific conduct, including the use or threat of violence (subsection (1)), the use of obscene, profane, or abusive language (subsection (2)); and the placement of telephone calls without meaningful disclosure of the caller's identity (subsection (6)).

day one." Losco offered to settle the entire account for a single payment of $285. When Dean Hinderliter stated "I don't have it today," Losco asked when he would have the funds. He replied that he would pay when he got his Social Security check in September, but would "probably break it into two payments." Losco stated: "Okay sir, what I can do for you is offer you two payments of $167." Dean Hinderliter responded, "Okay." After some discussion, Dean Hinderliter stated he would make the first payment "on the 15th of the month." Losco then said she needed a postdated payment, stating: "We can't hold your account over a verbal agreement hoping that you're going to send it in.... We have to have representation of the payment." They discussed making a post-dated payment through his checking account or via the internet, and Dean Hinderliter stated he would put his wife on the telephone and "let her set it up." He told his wife, plaintiff Alice Hinderliter, that they had to pay $167 in September and $167 in October. Alice Hinderliter took the telephone and told Losco that they could not make any payment until October, because they had "too many other things going on in September" including automobile repairs and a new door for their house "before winter sets in." Losco responded: "This is about to hit his credit and you're worried about a door?" She also stated that she would mark the file "refusal to pay" and that if no payment was made in September the entire amount would be due in October. Alice Hinderliter stated she could not make the full payment in October, at which point Losco stated that in that case there would be no settlement. The conversation deteriorated, and after saying, "I can pay $160 in October... can you live on $1,800 a month?" Alice Hinderliter hung up on Losco, who was saying, "Okay, ma'am, but you cannot pay what you want and when you want." At no time did either plaintiff instruct Losco to refrain from calling again.

Plaintiffs deposed Losco, who testified about her training and experience as a collector.

-7-

She testified that the system "doesn't even let [her] set up a payment outside of 30 calendar days, so if it was anything outside of that, [she] would just tell them that further collection action actually will continue[.]"  She testified that she had the discretion to designate a file "refusal to pay" or "cannot pay" based on various factors including whether the debtor has the ability to pay but has decided to make other payments that he deems "more important."  Regardless of whether the file was designated "refusal to pay" or "cannot pay," the debtor would continue to receive calls.  She designated plaintiff's file "refusal to pay" primarily because of Alice Hinderliter's statement that they could not pay in September because they were buying a door.  She also stated that she had the authority to set up a good-faith payment of as little as $10, in which case the debtor would not receive any more calls.  Losco's testimony indicates that she handled this case in accordance with her training, as she handled hundreds of other calls, for the purpose of collecting the accounts assigned to her.  Nothing in plaintiffs' deposition of Losco supports a finding of an intent to harass, oppress, or abuse plaintiffs.

Regarding the volume and pattern of the calls, it is undisputed that Losco spoke with plaintiffs only once, on August 23, 2010.  After Alice Hinderliter hung up, Losco did not call again until 1:25 p.m. the following day.  Thereafter, she telephoned plaintiffs four more times in August; seventeen times in September; and fifteen times in October.  The earliest call was 8:20 a.m.; the latest was 7:51 p.m.  On all but three occasions, Losco placed only one call in a day.  She never placed more than two calls in a day.  On the three days when Losco placed two calls, she made the second call at least an hour and a half after the first.  Plaintiffs never answered any of the calls.  It appears that Losco left a message on the answering machine each time.  Plaintiffs do not complain of the content of the messages left on the answering machine.  Nor do plaintiffs

cite to any improper conduct on the part of Losco such as calling numerous times in a day, calling back immediately after Alice Hinderliter hung up, leaving threatening messages, telephoning a third party, disguising the nature or origin of the calls, or calling at odd or inconvenient times.

Plaintiffs contend that "Defendant was not entitled to keep calling Plaintiffs after being instructed that they could not make any payments until October and that Plaintiffs disputed part of the bill." Plaintiffs cite no law prohibiting Losco from attempting to arrange an earlier payment. Indeed, Dean Hinderliter, the debtor, agreed to make a payment in September, although his wife then stated they could not make a payment until October. Further, while Dean Hinderliter initially disputed part of the bill by stating he "would not pay" so much of the $513.98 debt as was based on the termination fee, he then agreed to pay $258 to settle the entire account. There is no evidence that plaintiffs made a payment on the account in October or at any other time. Under these circumstances, the volume and pattern of the calls is consistent with an intent to contact plaintiffs to arrange for payment. There is no record support for a finding that Losco made the unanswered follow-up calls with an intent to annoy, abuse, or harass plaintiffs in violation of section 1692d(5).

Plaintiffs raise few complaints about the content of the August 23, 2010 telephone call. In their memorandum of law, plaintiffs complain that "Defendant did not set up Plaintiffs with a payment plan or take a good faith payment from them." As noted, the transcript demonstrates that, in her single conversation with plaintiffs, Losco offered various options, including a substantial discount and payment in two installments, and it appeared that she and Dean Hinderliter had reached an agreement. After Alice Hinderliter hung up, Losco had no further opportunity to set up a payment plan or accept a good faith payment, since plaintiffs never again

answered her calls.  Although Losco testified she was authorized to accept a "good faith" payment of as little as $10, there is no basis to find that she was required to do so or that, under the circumstances, her failure to do so constituted conduct the natural consequence of which was to harass, oppress, or abuse plaintiffs in violation of section 1692d.

Plaintiffs also complain that during the August 23, 2010 call, Losco stated that failure to resolve the debt would affect Dean Hinderliter's credit.  This common-sense observation is not abusive.  In their memorandum of law plaintiffs argue that Losco told them she would designate the account "refusal to pay"; that she should have marked it "cannot pay"; and that if she had marked the file "cannot pay" they would not have received any more calls.  This assertion is unsupported by any evidence and directly contradicts Losco's deposition testimony that in either case plaintiffs would continue to receive calls.  Losco's persistent efforts during the August 23, 2010 call to obtain plaintiffs' commitment to make a payment in September, although perhaps unpleasant for plaintiffs, do not support a finding that her conduct was harassing, oppressive, or abusive.  "'Section 1692d is meant to protect debtors from oppressive and outrageous conduct, but not from every negative consequence of debt collection.'" *Johnson*, 2011 WL 6012509 at *5 (citation omitted).  Plaintiffs' contentions regarding the content of the August 23, 2010 call are either unsupported by the record or, assuming their truth and viewing them from the perspective of the least sophisticated consumer, do not amount to harassing, oppressive, or abusive conduct within the meaning of section 1692d.  Further, whether viewed from the perspective of the least sophisticated consumer or that of a consumer whose circumstances make him relatively more susceptible to harassment, oppression, or abuse, the totality of defendant's conduct does not support a section 1692d claim.

The undisputed factual record, interpreted most favorably to plaintiffs, would not permit a rational trier of fact to find that Losco made the unanswered telephone calls to plaintiffs "with intent to annoy, abuse, or harass" them in violation of section 1692d(5).  Nor, on the undisputed record, could a rational trier of fact find that defendant engaged in conduct "the natural consequence of which is to harass, oppress, or abuse" plaintiffs in violation of section 1692d.  Plaintiffs raise no question of fact requiring a trial.  Defendant's motion for summary judgment dismissing the action is granted.

Defendant requests an award of attorney's fees on the ground that the action was brought "in bad faith and for the purpose of harassment."  15 U.S.C. § 1692k(a)(3).  The request is denied.

## CONCLUSION

It is therefore

ORDERED that defendant's motion (Dkt. No. 23) for summary judgment dismissing the action is granted; and it is further

ORDERED that defendant's request for an award of attorney's fees is denied; and it is further

ORDERED that the action is dismissed with prejudice.

IT IS SO ORDERED.

September 7, 2012
Syracuse, New York

Honorable Norman A. Mordue
U.S. District Judge